UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DUSTIN L VANN,

    Plaintiff,

v.                                      Case No.:   2:23-cv-396-SPC-NPM

RAMI TABIL, DAVID KELLER
and GREGORY HUGHES,

    Defendants.
_____/

# **OPINION AND ORDER**

Before the Court are Defendant Gregory Hughes's Motion for Summary Judgment (Doc. 43) and Defendants Rami Tabil and David Keller's Motion to Dismiss (Doc. 44).

## **Background**

This is a civil rights case.  Dustin Vann is a prisoner of the Florida Department of Corrections, and he sued three corrections officers—Tabil, Keller, and "Lt. John Doe (Lt. Hughes) possibly"—under 42 U.S.C. § 1983 for violating his Eighth and Fourteenth Amendment rights.  (Doc. 1).  Tabil and Keller move to dismiss Vann's Complaint for failure to state a claim and failure to exhaust, and they raise sovereign and qualified immunity.  Hughes seeks summary judgment because he is not the lieutenant identified in the Complaint as John Doe.

The Court recounts the factual background as pled in Vann's Complaint, which it must take as true to decide whether the complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

Vann is a known gay and transgender member of the LGBTQ gang OUTKASST. At about 8:00 p.m. on March 26, 2021, Keller told Vann he was moving from Charlotte Correctional Institution's G-dorm to F-dorm. While escorting Vann, Keller said, "I hope you are ready, faggot" and, "Tonight we will see how much man is still in you." (Doc. 1 at 5). When they arrived at F-dorm, Keller took Vann to his new cell, which was occupied by an inmate named Fernandez. While Keller was removing Vann's restraints, Fernandez said he could not share a cell with Vann because Vann was a homosexual and Fernandez was a member of the Bloods, a gang apparently known for stabbing members suspected of homosexuality. Vann attempted to hold the door open, and Keller forced Vann into the cell and slammed the door shut, leaving Vann's property in the hallway.

When Keller left, Fernandez threatened Vann and told him to get out of his cell. Vann tried to get the guards' attention by kicking the door, but he was ignored for about an hour. Vann later heard that Keller made comments like, "hear that…that's that fuckboy Vann kicking the door" and "I might have got that sissy killed." (Doc. 1 at 7). At around 9:30 p.m., Tabil came to Vann's cell

2

door. Fernandez told Tabil he could not allow a "faggot" to remain in his cell because he was a Blood. Vann requested protective custody. Tabil got angry, yelled, "I don't care! You ain't moving. Fight or fuck!," and left. (*Id.*). Fernandez then started making comments about sex, and he showed Vann a knife he had hidden in his bed. Fernandez orally and anally raped Vann. Vann did not resist because he did not trust the guards to protect him, and he feared Fernandez would stab him.

Fernandez then told Vann that if security did not remove him from the cell soon, he would need to cut his wrists. An orderly came to the cell and gave Fernandez two razor blades. Vann continued kicking the cell door until Tabil returned and refused to call his supervisor or put Vann in protective custody.

At about 12:30 a.m., Officer Der'Cole saw Vann with a razor and called Tabil to the cell. Vann and Fernandez told Tabil that Vann would be forced to cut himself unless he was removed from the cell. Tabil called for his supervisor, identified here as Lt. John Doe. Vann and Fernandez explained the situation again. Doe told Vann to slide the razor under the door and said he would secure Vann in the shower until he could figure out what to do. But after Vann slid the razor under the door, Doe and Tabil walked away, laughing. Fernandez gave Vann the second razor and forced him to cut his wrist. Vann complied because he knew it would be worse if Fernandez stabbed him. At about 1:30 a.m., Officer Der'Cole saw that Vann was bleeding and called it in

3

on his radio. Tabil yelled at Der'Cole for opening the food flap and reporting the situation.

Vann suffered a mental breakdown and has been committed to in-patient programs to treat his mental trauma. He sues the defendants for deliberate indifference under the Eighth Amendment. He also asserts a Fourteenth Amendment equal protection claim against Keller and Tabil. Vann requests compensatory and punitive damages, declaratory judgment, and an injunction barring Keller and Tabil from FDOC employment.

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation

marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Vann files his Amended Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Vann is representing himself in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Discussion

### A. Gregory Hughes/John Doe

The Court starts with Hughes' motion. Hughes claims he was not employed by the FDOC until July 2, 2021, about three months after the

5

incident alleged in the Complaint. The affidavit of an FDOC human resources consultant corroborates that claim. For his part, Vann acknowledges that Hughes is likely not the person identified in his Complaint as John Doe. The Court will thus dismiss Vann's claim against Hughes and reinstate John Doe as a defendant. To continue pursuing his claim against John Doe, Vann must learn his identity so he can be served with process. If Vann cannot learn John Doe's name from the defendants through discovery, he can ask the Clerk to issue a subpoena under Federal Rule of Civil Procedure 45(a)(3). Vann must notify the Court when he discovers Doe's real name.

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e. The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that

6

light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…

If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside,* 541 F.3d 1077, 1082-83 (11th Cir. 2008).

Both parties submit copies of Vann's grievances, so their contents are not in dispute. Vann submitted two informal grievances on April 3, 2021. In the first, Vann summarizes the basic facts—Keller moved Vann from G-dorm to F-dorm around 8:45 p.m. on March 26, 2021; Fernandez objected because he is a Blood and Vann is gay; Keller shoved Vann into the cell; and Vann screamed and begged for help until Fernandez forced him to cut himself around 1:00 a.m. (Doc. 44-1 at 1). The second grievance repeats the basic facts and complains that Tabil refused to remove him from the cell despite the danger. (Doc. 44-2 at 1). Both grievances were approved and "referred to Security for appropriate action." (Doc. 44-1 at 2; Doc. 44-2 at 2). Because the grievances were approved, Vann was not required to proceed to the next stage of the grievance process. See *Williams v. Dep't of Corr.,* 678 F. App'x 877, 881 (11th Cir. 2017).

7

Tabil and Keller argue Vann failed to satisfy the exhaustion requirement because the grievances he submitted did not include all the relevant facts, so the FDOC did not have a fair opportunity to investigate his claims. Courts look to the grievance rules of the particular prison system to determine how much detail a prisoner must include in a grievance. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The only content requirements in the FDOC rules are "that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." Fla. Admin. Code r. 33-103.005(2)(b)2. The rules do not require inmates include any particular level of detail, so "a standard akin to notice pleading is appropriate when determining whether [a plaintiff's] grievances contained sufficient details to exhaust [his] administrative remedies." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).

The Court finds that Vann's grievances included enough detail to give officials notice of his claim and a chance to investigate. FDOC rules did not require him to include every detail. The Court thus finds that Vann exhausted available administrative remedies.

### C. Eleventh Amendment Immunity

Keller and Tabil argue the Eleventh Amendment bars Vann's official capacity claims. Vann concedes the point. (*See* Doc. 48 at 5). The Court will thus dismiss Vann's official capacity claims.

**D. Pleading Sufficiency**

a. Eighth Amendment

The Eighth Amendment's "prohibition of cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To succeed on a failure to protect claim, a plaintiff must show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the prison official was deliberately indifferent to the risk, and (3) the constitutional violation caused his injuries. *Id.* at 1357-58. Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). A defendant was not deliberately indifferent if he responded reasonably to the risk. *Id.*

Keller and Tabil argue Vann failed to sufficiently allege they had knowledge of a serious risk of harm or that they were deliberately indifferent to that risk. The Court disagrees. The defendants do not dispute that locking Vann in a cell with Fernandez created a substantial risk of serious harm. And indeed, the Court finds that locking a gay and transgender inmate in a cell with a member of a gang known for violence against suspected homosexuals

9

creates a substantial risk of serious harm. The questions here are whether Vann alleged facts demonstrating that Keller and Tabil were actually and subjectively aware of that risk, and whether they recklessly disregarded it.

According to the Complaint, Fernandez told both Keller and Tabil he could not allow Vann to stay in his cell because Fernandez was a Blood and Vann was gay. It is reasonable to infer that Keller and Tabil knew violence was likely given Vann's allegation that Bloods are known for stabbing members suspected of homosexuality. What is more, both defendants allegedly made statements that acknowledged a risk of violence. Vann alleges Keller was overheard saying, "I might have got that sissy killed," and Tabil responded to Vann's plea for help but saying, "I don't care!...Fight or fuck!" (Doc. 1 at 7). And Tabil and Keller recklessly disregarded the risk by doing nothing to address it. The Court finds that the Complaint states a plausible Eighth Amendment claim.

### b. Fourteenth Amendment

Vann also asserts an equal protection claim against Keller and Tabil. He argues the homophobic slurs the defendants used show they were motivated by bigotry. To establish an Equal Protection claim, Vann must demonstrate that (1) he is similarly situated with prisoners who received more favorable treatment, and (2) the discriminatory treatment was based on a constitutionally protected interest, like race or gender. *Jones v. Ray,* 279 F.3d

10

944, 946-47 (11th Cir. 2001). Vann does not allege the defendants treated him differently than a similarly situated inmate who was not gay or transgender. Thus, he has not stated an equal protection claim.

### E. Qualified Immunity

Keller and Tabil argue Vann's individual capacity claims against them are barred by qualified immunity. "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id*. at 820-21.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 138 S. Ct. at 589 (internal quotations omitted). To show that a legal principle is clearly established, a

11

plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

As explained above, Vann adequately alleged that Keller and Tabil violated his Eighth Amendment right, so the question is whether the unlawfulness of their actions was clearly established at the time. It was. In *Caldwell v. Warden, FCI Talladega*, the Eleventh Circuit noted it had "already clarified that a prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." 748 F.3d 1090, 1102 (11th Cir. 2014). Keller and Tabil are not entitled to qualified immunity.

**F. Injunctive and Declaratory Relief**

In addition to compensatory and punitive damages, Vann seeks a declaration that the acts described in the Complaint violated his rights and a permanent injunction barring Keller and Tabil from FDOC employment. Keller and Tabil argue Vann fails to demonstrate entitlement to declaratory or injunctive relief.

Vann is not entitled to injunctive or declaratory relief because he is no longer imprisoned at Charlotte C.I.—he has been transferred to Florida State

Prison. A prisoner's transfer or release from the prison where his claim arose moots a request for injunctive or declaratory relief. *Johnson v. Warden*, 491 F. App'x 60, 62 n.1 (11th Cir. 2012) (citing *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986)). That is because a party seeking forward-looking relief "must face a real and immediate threat of repeated injury." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (internal quotation marks and citation omitted). Keller and Tabil pose no immediate threat to Vann because Vann is not imprisoned where they work. The Court will dismiss Vann's claims for injunctive and declaratory relief.

Accordingly, it is now

**ORDERED:**

Defendant Gregory Hughes's Motion for Summary Judgment (Doc. 43) is **GRANTED** and Defendants Rami Tabil and David Keller's Motion to Dismiss (Doc. 44) is **GRANTED in part and DENIED in part**.

(1) Vann's claim against Hughes is **DISMISSED**. The Clerk is directed to change the CM/ECF entry for Gregory Hughes to "Lt. John Doe."

(2) Vann's Fourteenth Amendment claim, official capacity claims, and claims for injunctive and declaratory relief are **DISMISSED.**

(3) Keller and Tabil must answer the Complaint within **14 days** of this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on August 16, 2024.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record